Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8278 | **DATE** | 8/26/2002 |
| **CASE TITLE** | GERALD D. VETTER vs. VILLAGE OF OAK LAWN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendants' motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 27 2002 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 AUG 26 PM 4:50 | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GERALD D. VETTER, | ) |
| | ) **DOCKETED** |
| Plaintiff, | ) AUG 2 7 2002 |
| | ) |
| | ) Case No. 01 C 8278 |
| v. | ) |
| | ) The Honorable John W. Darrah |
| VILLAGE OF OAK LAWN, | ) |
| CHIEF OF POLICE JAMES HOUK, | ) |
| DIVISION CHIEF ROBERT SMITH, | ) |
| and DIVISION CHIEF TERRENCE | ) |
| VORDERER, in their individual and | ) |
| official capacities, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gerald D. Vetter ("Plaintiff"), filed a single-count complaint against Defendants, the Village of Oak Lawn, Chief of Police James Houk, Division Chief Robert Smith, and Division Chief Terrence Vorderer (collectively, "Defendants"), under 42 U.S.C. § 1983 (2002), alleging denial of equal protection of the laws. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56.

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses

. . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff is a sergeant of the Village of Oak Lawn ("the Village"). (Def.'s 56.1 ¶ 1.) James Houk ("Houk") was the Chief of Police of the Oak Lawn Police Department ("the Department") from 1994 until March 26, 2002. (Def.'s 56.1 ¶ 3.) Robert Smith ("Smith") has been the Chief of Police since March 26, 2002. (Def.'s 56.1 ¶ 4.) Before serving as Chief of Police, Smith was

Division Chief of the Detective Division for eight years. (Def.'s 56.1 ¶ 4.) Terrence Vorderer ("Vorderer") has been Division Chief of the Patrol Division of the Department since 2000. (Def.'s 56.1 ¶ 5.) Before that, Vorderer was Captain of the Patrol Division for five years. (Def.'s 56.1 ¶ 5.)

Although this information is not contained in the complaint, Defendants submitted the following facts in support of their motion for summary judgment. From March 1999 until March 2001, Plaintiff was one of the supervising officers of Officer Tina Knepper ("Officer Knepper"). (Def.'s 56.1 ¶ 10.) Officer Knepper alleges that Plaintiff's son, who is a patrolman with the Department, made advances toward her on two occasions in 1999 and 2000. (Def.'s 56.1 ¶¶ 12, 13.) Officer Knepper later complained to Vorderer that, after she rejected his son's advances, Plaintiff scrutinized her reports and showed up on all her calls even if they were minor. (Def.'s 56.1 ¶ 21.) Vorderer then asked Plaintiff to stop supervising Officer Knepper. (Def.'s 56.1 ¶ 39.) When the shifts were re-bid, Officer Knepper was assigned to the day shift, and Plaintiff remained on the afternoon shift. (Def.'s 56.1 ¶ 44.)

When the Village is notified of an employee's on-the-job injury, the Village sends the employee to either Concentra Medical Center ("Concentra") or Christ Hospital for examination, depending on the severity of the injury. (Def.'s 56.1 ¶ 54.) Employees also have the option of seeking treatment from their own physician. (Def.'s 56.1 ¶ 55.) If the physician determines the employee may not return to work for a definite period of time, the Village takes the position that the employee should not have to return to work; and the days missed from work are recorded as on-the-job injury time. (Def.'s 56.1 ¶ 56.) If the physician determined the employee is capable of returning to work, but with certain restrictions, such as light duty assignment, the Village takes the position that the employee should return to work and will make accommodations for the employee so as to

fit within the parameters of the physician's restrictions. (Def.'s 56.1 ¶ 57.) If the physician determines the employee is capable of returning to work, but the employee chooses not to return to work for other reasons, the days missed from work are recorded as sick days. (Def.'s 56.1 ¶ 58.) Susan Lanham, the Personnel/Benefits Accountant for the Village, informs the department heads of the Village's position in each situation; and the department heads instruct their employees accordingly. (Def.'s 56.1 ¶ 59.)

On July 24, 2001, Plaintiff was injured while trying to restrain a combative person. (Def.'s 56.1 ¶ 45.) The results of an MRI were sent to Dr. Ryan, who examined the MRI scan and took x-rays of Plaintiff's right shoulder. (Def.'s 56.1 ¶ 53.) Dr. Ryan concluded Plaintiff was capable of doing light-duty work. (Def.'s 56.1 ¶ 53.)

Vorderer testified that he informed Plaintiff that it was the Village's position that Plaintiff was capable of light duty and that Plaintiff was to return to work. (Def.'s 56.1 ¶ 61.) Vorderer also testified that he informed Plaintiff that Plaintiff could use sick time if he felt unable to return to work. (Def.'s 56.1 ¶ 62.) Plaintiff returned to work, and the days he subsequently took off were recorded as sick days. (Def.'s 56.1 ¶ 63.) Plaintiff testified that he took sick days because he was not allowed to use on-the-job injury time. (Def.'s 56.1 ¶ 64.)

The Department's General Order states it is the Department's policy that there are no light-duty assignments and that any employee who is injured in the line of duty is encouraged to return to work as soon as possible. (Def.'s 56.1 ¶ 65.) The General Order also states that the Department will coordinate assignments to facilitate the employee's return to full-duty assignments. (Def.'s 56.1 ¶ 65.) The Chief of Police decided that Plaintiff's light-duty assignment would be working at the front desk during regular day-shift hours. (Def.'s 56.1 ¶ 69.)

Patrol officers and supervisors who return to work after sustaining injuries are typically assigned to light duty at the front desk. (Def.'s 56.1 ¶ 67.) Front desk assignments include answering the telephone, directing calls, and taking reports. (Def.'s 56.1 ¶ 70.) A two-foot brick wall and bullet-proof glass panel separate the front desk from the general public. (Def.'s 56.1 ¶ 71.) Plaintiff believes that he was assigned to work the front desk in order to punish and humiliate him. (Def.'s 56.1 ¶ 72.) Plaintiff testified that he knew of other employees who had been assigned to light duty at the front desk. (Def.'s 56.1 ¶ 74.) Officer Patrick Barron testified that he believes that injured officers are assigned to work the front desk as a "tactic" to get the officers back in the field more quickly. (Barron Dep. at 88.)

If an officer has a light-duty order from his doctor, the officer should schedule his physical therapy during work hours, preferably at the beginning or end of the shift, as officers are compensated for their physical therapy time. (Def.'s 56.1 ¶ 75.) If the employee schedules his physical therapy before or after his shift, it is considered personal time; and he will not be compensated for the time. (Def.'s 56.1 ¶ 76.) Vorderer testified that he asked Plaintiff to schedule his physical therapy sessions during his shift. (Def.'s 56.1 ¶ 77.) Plaintiff testified that he did not know of any other person in the Department who had encountered such difficulty in scheduling physical therapy or who had been told to rearrange his schedule. (Def.'s 56.1 ¶ 80.)

On July 5, 1999, Sergeant Timothy Furmanek ("Furmanek") tore the meniscus in his left knee while on the job and re-injured his knee in July 2001. (Def.'s 56.1 ¶ 81.) Vorderer assigned Furmanek to an afternoon shift at the front desk upon his return to work. (Def.'s 56.1 ¶ 82.) When Furmanek had surgery after he re-injured his knee in July 2001 and took time off work, Susan Lanham required him to take sick time. (Furmanek Dep. at 15-17.)

-5-

Pursuant to the Supervisor's Collective Bargaining Agreement, which was in effect at all times relevant to Plaintiff's complaint, the Village retains the right to "direct the working forces . . . to assign and transfer employees . . . to plan, direct, control and determine the operations or services to be conducted in or at the . . . Department or by employees of the Village." (Def.'s 56.1 ¶ 36.)

## DISCUSSION

Defendants argue that summary judgment on Plaintiff's equal protection claim is appropriate because Plaintiff cannot show that he was treated differently from similarly situated officers and, even if Plaintiff could show that he had been treated differently from similarly situated officers, Plaintiff cannot show that illegitimate animus toward him was the cause of the differential treatment.

"'The purpose of the equal protection clause of the Fourteenth Amendment is to secure to every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). In order to prove an equal protection claim, a plaintiff must present evidence that the defendant treated him differently from others who were similarly situated and that the defendant treated him differently because of his membership in a class. *Hedrich v. Bd. Regents Univ. Wisc. Sys.*, 274 F.3d 1174, 1183 (7th Cir. 2001). However, successful equal protection claims may be brought by a "class of one" if the plaintiff can prove that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. Under Seventh Circuit precedent, an individual may also prove an equal protection claim by showing that "the action taken by the state . . . was a

spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995). However, this class of equal protection claims requires an individual to prove that illegitimate animus toward the individual by the defendant was the cause of such treatment. *Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998), *aff'd on other grounds*, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Defendants argue that summary judgment is appropriate because Plaintiff cannot show that he was treated differently from similarly situated officers. Defendants argue that Plaintiff has failed to show that other officers injured on the job were not assigned light duty or were treated differently with respect to sick time, personnel problems, or scheduling physical therapy. Plaintiff argues that he was denied equal treatment in that the Department's sexual harassment policy and General Order governing internal complaints were not applied to him.

There is no genuine issue of material fact as to whether Plaintiff was treated differently from similarly situated officers. The evidence presented establishes that officers who did not schedule physical therapy during working hours were not compensated for that time. The evidence presented also establishes that it was the Department's practice to get officers back to work as soon as possible after injuries, usually light duty working the front desk, and that officers who did not return to work on light duty were required to use sick time. Whether or not assigning an injured officer to the front desk was a "tactic" designed to get officers back to work sooner, this "tactic" was applied to all injured officers, not just Plaintiff. Thus, Plaintiff has not identified any officers who were subjected to more favorable treatment regarding sick time and light duty.

Furthermore, the incident with Officer Knepper does not demonstrate that Plaintiff was treated differently from similarly situated officers. Plaintiff has not identified any other officers

-7-

against whom an internal complaint was made who was treated more favorably than he was or to whom the Department's sexual harassment policy and General Order regarding internal complaints were applied when they were not applied to Plaintiff. Furthermore, Plaintiff has not identified any similarly situated officers who were treated differently with regard to personnel problems. Plaintiff has not presented any evidence that it was not the Department's practice to remove a complaining officer from the allegedly offending officer's supervision. Moreover, Plaintiff has not presented any evidence that he was treated differently due to Officer Knepper's complaint against him. Therefore, there is no genuine issue of material fact as to whether Plaintiff was treated differently from similarly situated officers.

Even if Plaintiff could show that he had been treated differently from similarly situated officers, Plaintiff cannot show that illegitimate animus toward him was the cause of the differential treatment. Other than his belief that he was assigned to the front desk in order to punish and humiliate him, Plaintiff has not presented any evidence that would suggest that Defendants acted out of vindictiveness or spite to "get" him. *See Esmail*, 53 F.3d at 180. Rather, the evidence presented indicates that Plaintiff was subjected to the Department's policies, procedures, and practices.

Plaintiff has not presented any evidence to show that there is a genuine issue of material fact as to whether Defendants singled him out for unfair treatment. Therefore, Defendants' motion for summary judgment is granted.

## CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED.

**IT IS SO ORDERED.**

Date: August 24, 2002

John W. Darrah, Judge
United States District Court